NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP INFERMO, : | |
| : | Civil Action No. 10-2498 (SRC) |
| Plaintiff, : | |
| : | OPINION |
| v. : | |
| : | |
| NEW JERSEY TRANSIT RAIL : | |
| OPERATIONS, INC., : | |
| : | |
| Defendant. : | |
| : | |

**CHESLER**, District Judge

     This matter comes before the Court upon Defendant's motion for summary judgment [docket entry 24]. Plaintiff has opposed the motion. This Court has considered the submissions by the parties in connection with these motions and has opted to rule without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, this Court denies Defendant's motion.

**I.**    **FACTS**

     This action arises out of an injury sustained by Plaintiff Philip Infermo ("Plaintiff" or "Infermo") while performing his job duties as a signal maintainer employed by Defendant New Jersey Transit Rail Operations, Inc. ("Defendant" or "NJT"). On October 23, 2008, Infermo and another NJT employee, William Gelmi ("Gelmi"), were walking to a signal case, or "start box," to perform a test of rail signal apparatus. The signal case was located beside the railroad tracks.

To reach the signal case, Infermo and Gelmi walked along an area adjacent to the track known as the right of way, essentially a roadway used by NJT for access to rails and equipment. The right of way is covered in small loose stones, known as ballast. Shortly before the accident, Infermo and Gelmi had crossed the Ryerson Bridge, to the right of way east of Ryerson Road, on their way to the signal box. They were walking in the right of way, about ten feet of away from the track and about two feet away from each other when Infermo lost his footing and fell, breaking his leg. Gelmi also lost his balance but was able to catch himself and avoid falling. Infermo testified that he was looking straight ahead as he walked, and saw that ballast had been washed out from that section of the right of way, but that he and Gelmi walked over it because it was the only way to reach the signal case without walking on the track, i.e., "fouling," which is forbidden without permission from a dispatcher.

      The area where Infermo and Gelmi were walking when the accident occurred had sections of eroded ballast, and the ground was somewhat uneven, as evidenced by pictures taken the day after the incident. (In deposition, Infermo described the ground conditions as a cross between a wash-out and a gulley, the former referring to a slight depression in the soil and the latter connoting a larger ditch.) In contrast, the right of way on the west side of the Ryerson Bridge was not. Infermo and Gelmi both testified that the right of way east of the bridge was a popular spot for individuals to ride their all-terrain vehicles ("ATVs"). Gelmi stated that he believed the ballast erosion was likely the result of NJT's own vehicles and the ATVs using the right of way. NJT acknowledges that it was aware that people take their ATVs onto the right of way east of Ryerson Road and that their unauthorized use disturbs the surface.

After he fell, Infermo told Gelmi he was hurt, and Gelmi called their supervisor to ask for help. Infermo was taken by ambulance to the hospital for treatment. Infermo was out of work for approximately five months due to his injury.

The incident was documented by NJT in a formal Report of Personal Injury prepared by Infermo's supervisor, Alex Rivera. On the same day as the accident, while Infermo was in the hospital emergency room, Rivera and Michael Berko, another NJT employee investigating the incident, approached Infermo to ask him questions and obtain his oral statement in connection with the investigation. At that time, his statement was recorded in writing by Rivera, and Infermo signed the statement. Infermo testified that he had been "drugged up" as soon as he arrived at the hospital. He stated that while he remembered that Berko and Rivera came to speak to him, he could not recall the substance of their questions or his answers. (Gregorek Cert., Ex. C at 65:7-13.) Berko admits that at the time he spoke with Infermo about the incident and obtained his statement, Infermo had already been administered sedatives for his pain. As part of the investigation, Berko also inspected the site of the accident and photographed it on October 24, 2008.

The October 24, 2008 Investigation Report of Employee Injury, prepared by Berko, stated that Infermo slipped on ballast east of the Ryerson Road crossing but reported that his "site inspection at the location of the injury revealed normal right of way walking conditions." (Id., Ex. L.) Berko's investigation team determined that the accident occurred because Infermo was "not aware of his surroundings and was not alert to the walking conditions on the right of way." (Id.) Based on this finding, the Investigation Report concluded that Infermo had violated NJT Safety Rules 52 and 200(b). Rule 52 states as follows: "Employees must be aware of their

3

surroundings and are responsible for their own safety and the safety of their co-workers, customers, and general public." (Id., Ex. E.)  Rule 200(b) states: "Employees must be alert and watch where they are walking and not run.  When walking they must . . . avoid slipping or tripping hazards." (Id.)

On April 8, 2009, upon his return to work after his convalescence, Infermo was given a disciplinary hearing on those violations.  Infermo and Gelmi testified, as did Berko.  The hearing resulted in a determination that the charges against Infermo had been substantiated.  Infermo was assessed discipline in the form of a five-day deferred suspension.  Infermo was also ordered to receive safety counseling.  Gelmi was not similarly charged with any safety violations, subjected to any discipline or ordered to attend safety counseling.

Plaintiff filed this action on May 17, 2010.  His Amended Complaint seeks relief under the Federal Employers' Liability Act for NJT's alleged negligence in maintaining the right of way in a hazardous condition.  It also seeks relief under the Federal Rail Safety Act for NJT's discipline of Infermo, which he alleges was imposed in retaliation for reporting his injury.

## II.   DISCUSSION

### A.   Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established.  Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202,

204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

      Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).  If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue

of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

  **B.**  **Analysis**

  Infermo's primary claim for relief arises under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, et seq., which imposes liability on railroads for injuries to their employees. The relevant provision of the statute provides that railroads will be held liable to their employees for injuries

> resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engine, machinery, track, roadbed, works, boats, wharves or other equipment.

45 U.S.C. § 51. The statute departs from common law negligence principles, making recovery easier to obtain than under a traditional negligence standard. Sinkler v. Mo. Pac. R.R. Co., 356 U.S. 326, 329 (1958). The Supreme Court has noted the deliberately broad and remedial purpose of the statute, stating that the "cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier." Id. Notably, under the FELA, a railroad will be held liable if its "negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 506 (1957); Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir.1991). While the statute does not completely dispense with the requirement that a plaintiff establish a causal connection between the railroad's negligence and the injury, it sets a very low proximate cause standard. Rogers, 352 U.S. at 506; Atchison T. &

S.F. Ry. Co. v. Saxon, 284 U.S. 458, 459 (1932).  Under the FELA, an employee's contributory negligence will not bar him or her from obtaining relief and may only be considered to diminish the employee's recovery of damages in proportion to his or her fault.  45 U.S.C. § 53; Norfolk S. Ry. Co. v. Sorrell, 549 U.S. 158, 167 (2007).  The defense of assumption of risk is completely eliminated.  45 U.S.C. § 54; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58 (1943).

Defendant argues that Plaintiff's FELA claim cannot, as a matter of law, proceed to a jury trial because his FELA cause of action, based on the negligent and improper maintenance of ballast on the right of way where Plaintiff fell, is precluded by another federal statute, the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq., and its implementing regulations.  In the alternative, Defendant argues that even if the FELA claim were not precluded, summary judgment on the claim would nevertheless be warranted on grounds that Plaintiff fails to establish the elements of negligence.  The Court, for the reasons that follow, does not agree with Defendant's preclusion argument.  After discussing the interplay between FELA and FRSA, the Court will proceed to review whether the record contains sufficient evidence to establish a prima facie FELA claim for negligence.

      1.      Preclusion of FELA Claim Predicated on Hazardous Condition of Trackside Ballast

The point of departure for Defendant's preclusion argument is the preemption provision contained in FRSA, a statute enacted in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  Striving for national uniformity of laws and regulations related to railroad safety, the preemption provision provides, in relevant part, that state laws will be displaced by a railroad safety regulation

7

"covering the subject matter of the State requirement." 49 U.S.C. § 20106. Defendant maintains that because Plaintiff's theory of negligence is predicated on the allegedly hazardous condition of the ballast, the subject matter of the claim is subsumed by a FRSA regulation prescribing standards for the support of railroad tracks by ballast. The ballast regulation reads as follows:

> Subpart D – Track Structure
>
> § 213.101 Scope
>
> This subpart prescribes minimum requirements for ballast, crossties, track assembly fittings, and the physical condition of rails.
>
> § 213.103 Ballast; general
>
> Unless it is otherwise structurally supported, all track must be supported by material which will –
>
> (a) Transmit and distribute the load of the track and railroad equipment to the subgrade;
>
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
>
> (c) Provide adequate drainage for the track; and
>
> (d) Maintain proper track cross-level, surface and alinement.

49 C.F.R. §§ 213.101, 213.103.

Defendant recognizes, as it must, that the preemption provision can have no direct applicability with regard to the viability of Plaintiff's FELA claim. Though predicated on principles of negligence, the cause of action created by FELA arises under federal, not state law. Defendant, however, cites three court of appeals decisions, from other circuits, which have reasoned that FRSA's goal of uniformity requires preclusion of FELA claims to the same extent

8

that analogous state law negligence claims would be preempted under the statute.  See Nickels v. Grand Trunk Western R.R., Inc., 560 F.3d 426, 430 (6th Cir. 2009); Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 443 (5th Cir. 2001); Waymire v. Norfolk & W. Ry. Co., 218 F.3d 773, 776 (7th Cir. 2000).  Two of these cases, Waymire and Lane, determined that FELA claims alleging excessive train speed were precluded by FRSA regulations governing speed limits.  Lane, 241 F.3d at 444; Waymire, 218 F.3d at 775-76. One of them, Nickels, addressed precisely the ballast regulation at issue in this case and held that it substantially subsumed all matters pertaining to ballast size. Nickels, 560 F.3d at 431.  The FELA claims reviewed by the Nickels court were based on allegations that the railroad worker plaintiffs sustained injuries from prolonged and repetitive walking on trackside mainline ballast, a larger-size stone less suited to foot traffic than smaller yard ballast.  Id. at 428.  The Sixth Circuit Court of Appeals concluded that because the plaintiffs' claims were predicated on the railroad's negligent use of oversize ballast in areas adjacent to the tracks where it knew the plaintiffs would be performing their required duties, the subject matter of their FELA claims was covered by the FRSA ballast regulation and thus the FELA claims were precluded.  Id. at 433.

In its own assessment of the interplay between FELA and FRSA, this Court is guided by the Supreme Court's articulation of well-settled principles of statutory construction.  It has held:

> The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible. There are two well-settled categories of repeals by implication: (1) Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later

9

> act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment.

Posadas v. National City Bank of N.Y., 296 U.S. 497, 503 (1936). Certainly, FRSA contains no express provision repealing FELA. This Court finds it very problematic to conclude that FRSA so completely occupies the field of railroad safety that the statute could be construed to supersede previously-enacted railroad safety legislation, particularly so as to eliminate the cause of action created by FELA for the purpose of making railroad workers whole for their on-the-job injuries. Cf. Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 566-67 (1987) (holding by Supreme Court that "absent an intolerable conflict between the [Railway Labor Act] and FELA," it was "unwilling to read the RLA as repealing any part of the FELA."). Moreover, the language of FRSA itself gives no indication that the express preemption clause crafted to address potentially varying and disparate state laws concerning standards for the operation and maintenance of the national rail system should, by implication, extend to subsume matters governed by FELA, which is concerned primarily with providing injured railroad employees a deliberately attainable remedy. In fact, as the Ninth Circuit has observed, FRSA's structure and legislative history indicates that Congress intended to leave existing federal statutes and regulations intact. See Marshall v. Burlington Northern, Inc., 720 F.2d 1149, 1152-53 (9th Cir. 1983); see also H.R. Rep. No. 91-1194 (1970), reprinted in 1970 U.S.C.C.A.N. 4104, 4105 (noting that despite enactment of FRSA as gap-filling statute to address national uniformity for standards governing tracks, roadbeds and equipment, the committee had chosen to continue previously enacted railroad safety legislation without change).

Those appellate courts that have precluded plaintiffs from proceeding on their FELA claims have reached that conclusion by analyzing the claim at issue under the FRSA preemption provision expressly applicable to state law claims. Even if the Court were to assume that a federal cause of action could theoretically be precluded by FRSA, the preclusive effect of the statute would not apply to bar Plaintiff's FELA claim in this case. Defendant has failed to persuade the Court that the preemption standard has been met.

Interpreting the language of the FRSA preemption provision, the Supreme Court has observed that the provision does not employ the broad term "relate to" but rather limits pre-emptive effect to those regulations "covering" the same subject matter as the state law in question. CSX Transportation v. Easterwood, 507 U.S. 658, 664 (1993). It held that "'covering' is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." Id. Applying Easterwood's interpretation, this Court rejects Defendant's contention that FRSA and its ballast regulation cover the subject matter of Plaintiff's FELA claim and, respectfully, disagrees with the conclusion reached by the Sixth Circuit in Nickels. FRSA, as the Court has noted, is concerned with national uniformity of safety standards for railroad tracks, roadbeds, equipment and the like. The ballast regulation imposes standards designed to create a safe roadbed for trains. The Secretary of Transportation included the ballast regulation in the section of FRSA regulations dedicated to "prescribing initial minimum safety requirements for railroad track" to ensure track conditions allowing for "safe operations over that track." 49 C.F.R. § 213.1. The ballast regulation does not even remotely touch upon the safety of individuals who may be required, as part of their employment with the railroad, to work in trackside areas, where they may be injured

by allegedly hazardous ballast conditions. FELA, in contrast, is concerned with providing rail workers redress for their on-the-job dangers and injuries. In short, a ballast regulation directed to providing suitable structural support for trains does not substantially subsume the subject matter of Plaintiff's FELA claim challenging his railroad employer's failure to provide safe working conditions by improperly maintaining the trackside ballast.[1]

Accordingly, the Court will not bar Plaintiff from seeking relief under FELA.

### 2. Merits of Plaintiff's FELA Claim

FELA is "founded on common-law concepts of negligence and injury." Gotshall, 512 U.S. at 543 (quoting Urie v. Thompson, 337 U.S. 163, 182 (1949)); see also Ellis v. Union Pac. R Co., 329 U.S. 649, 653 (1947) (holding that the basis of an employer's liability under FELA is its negligence). Thus, to establish his prima facie claim under FELA, Plaintiff must prove the elements of a common law negligence action: duty, breach, foreseeability, and causation. Robert v. Consol. Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987); Richardson v. Missouri Pacific R.R. Co., 677 F.2d 663, 665 (8th Cir. 1982). NJT takes the position that Infermo cannot meet his burden of satisfying these elements. The Court, for the reasons that follow, holds that Plaintiff's action can and should proceed to a trial by jury.

NJT argues that Infermo cannot prove duty because there is no evidence that it had actual or constructive knowledge of the alleged hazardous condition. The record, however, contains

---

[1] The Court notes that other district courts addressing the viability of FELA claims based on allegedly hazardous or improper ballast conditions have similarly concluded that the claims are not precluded by FRSA. See, e.g., Davis v. Union Pacific R.R. Co., 598 F. Supp. 2d 955, 959-960 (E.D. Ark.. 2009) (collecting cases); Wilcox v. CSX Transportation, Inc., No. 1:05-cv-107, 2007 WL 1576708, at *5-6 (N.D. Ind. May 30, 2007); Grimes v. Norfolk Southern Railway Co., 116 F. Supp. 2d 995, 1002-03 (N.D. Inc. 2000).

testimony indicating that Defendant was or should have been aware that (1) the ballast distribution and grading of the right of way differed in the areas east and west of the Ryerson Road crossing, (2) members of the public would at least occasionally if not often operate their ATVs on the right of way east of the Ryerson Bridge (the area where the subject accident occurred) and (3) such use disturbed the right of way's surfaces.  This evidence suffices to permit a jury to find the existence of duty.  See Rogers, 352 U.S. at 503 (finding, in a FELA case, that various facts supported jury's finding that the defendant was aware or should have been aware of conditions creating a likelihood of injury to the plaintiff railroad employee).  NJT also argues that Infermo cannot prove breach because expert testimony is required to establish that the composition of the ballast in the area of the accident created a hazardous condition.  Plaintiff admittedly has no expert on this subject.  The Court, however, finds that expert testimony on whether the right of way was in a condition posing a hazard to individuals walking along that path is not necessary.  Under Federal Rule of Evidence 702, expert testimony is permitted when "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.  A juror would be capable, without such assistance, of assessing the evidence of the allegedly uneven nature of the ground, the washed out areas of missing ballast and the grading of the right of way to determine the question of hazardous condition.  Finally, Defendant contends that Plaintiff may not prevail under FELA because various facts demonstrate that his own negligence contributed to the accident.  Even accepting, for the sake of argument, NJT's characterization of the facts as demonstrating that Infermo was negligent by, among other things, walking along the uneven right of way despite his awareness of the ballast washouts, this evidence does not defeat Plaintiff's FELA claim as a matter of law.  An employee's contributory

negligence does not bar recovery under FELA. 45 U.S.C. § 53; Gottshall, 512 U.S. at 544. The statute, moreover, has abrogated the common law defense of assumption of risk. 45 U.S.C. § 54; Gottshall, 512 U.S. at 544. Regarding the relaxed standard of liability under FELA, the Supreme Court has held as follows:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

Rogers, 352 U.S. at 506-07. As discussed above, the evidence of NJT's actual or constructive knowledge of a hazardous condition in an area where it required its employees, such as Infermo, to perform job duties suffices for Plaintiff to meet his low burden of causation. If the proofs show that Defendant's negligence played any part in Plaintiff's injuries, the FELA claim must be submitted to the jury for its determination. Clearly, that is the case here.

The Court, therefore, denies Defendant's motion for summary judgment on the FELA claim.

### 3..     FRSA Whistleblower Claim

FRSA provides that a railroad employer "may not discharge, demote, suspend, reprimand or in any other way discriminate against an employee" in whole or in part in retaliation for engaging in protected activity under the statute. 49 U.S.C. § 20109. Infermo claims that, in violation of this "whistleblower provision," NJT charged him with infractions of safety rules and

imposed discipline on him because he had sustained an on-the-job injury on October 23, 2008 and reported that injury to NJT.  Infermo also contends that the disciplinary charges stem from the information he provided to his supervisors in the investigation of the accident.  It appears that Infermo may be asserting that, besides the disciplinary proceedings and resulting deferred suspension, NJT's retaliatory conduct also consisted of the investigation improperly conducted by NJT supervisors who insisted on speaking to Plaintiff while he was in the hospital and clearly under sedating medication.

     FRSA authorizes an aggrieved employee to initiate a civil action, if he first files a complaint regarding the alleged retaliation with the Department of Labor and it fails to issue a final decision within 210 days of filing.  49 U.S.C. § 20109(d)(3).  Defendant does not dispute that this prerequisite has been met.

     Defendant, rather, challenges the FRSA retaliation claim on the grounds that Plaintiff did not engage in protected activity but rather merely fell and injured himself.  The Court disagrees. The whistleblowing provision of FRSA identifies as protected activity various conduct by an employee.  Two categories are invoked by Infermo in support of his retaliation claim: providing information to a supervisor regarding conduct the employee reasonably believes constitutes a violation of federal railroad safety laws or regulations and notifying the railroad carrier of a work-related personal injury of an employee.  49 U.S.C. § 20109(a)(1) & (4).  The evidence shows that Plaintiff indeed reported his work-related injury to NJT and supplied NJT investigators with information concerning the accident and NJT's possible safety violations. Proof that Plaintiff engaged in these protected activities, together with evidence that discipline was in fact imposed on Plaintiff in connection with the accident that prompted his reports of

15

injury and safety violations presents a triable issue of fact regarding whether NJT engaged in prohibited retaliatory conduct. The evidence, in other words, appears sufficient to establish a prima facie FRSA retaliation claim.

Though the parties have not presented any binding or even persuasive authority to the Court concerning how to evaluate the viability of a FRSA whistleblower claim, Defendants have urged the Court to apply the analytical framework employed in cases involving employment discrimination or retaliation under other federal statutes, in particular Title VII of the Civil Rights Act. See, e.g., Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 488 (D.N.J. 2002) (applying analysis used in employment discrimination cases brought under Title VII, Americans with Disabilities Act and Age Discrimination in Employment Act to an action for retaliation under the Family Medical Leave Act and noting court of appeals decisions having done the same); see also Carroll v. United States Dep't of Labor, 78 F.3d 352 (8th Cir. 1996) (applying Title VII burden-shifting framework to a whistleblower case under the Energy Reorganization Act). Those cases employ the burden-shifting analysis articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The three-step McDonnell Douglas test has been summarized as follows:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (citations omitted).

As set forth above, the Court has found that Plaintiff proffers sufficient proof to establish a prima facie case of retaliation under FRSA. There is evidence that (1) Infermo engaged in protected activity under the statute; (2) he suffered an adverse employment action (the safety violation charges and resulting discipline of deferred suspension); and (3) there is a causal connection between the protected activity and the discipline. NJT, in response, has articulated a legitimate reason for the disciplinary action against Infermo. It has stated that, in deliberately walking in an area he knew to have an uneven surface and ballast wash-outs, Plaintiff was careless and failed to avoid a slipping hazard, as required by NJT's internal safety rules. These safety violations, NJT maintains, were substantiated at a disciplinary hearing and justified the discipline imposed on Infermo. The employer's burden of production at this second step in the McDonnell Douglas analysis is a light one, and it has been met here. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994) ("The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."). Shifting back to Plaintiff, the Court, however, concludes that Plaintiff has proffered sufficient evidence that reason given by NJT as a legitimate basis to discipline Plaintiff is mere pretext. To defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. As Plaintiff has highlighted, his work partner on the day of the October 23, 2008 accident, Gelmi, was walking along the same allegedly hazardous path and would have presumably, according to NJT's rationale for disciplining Plaintiff, failed to

avoid the same tripping hazards.  Indeed, Gelmi testified that he, too, lost his footing on the right of way but, unlike Plaintiff, was able to steady himself and avoid falling.  Gelmi was not charged with any safety violations, nor required to attend safety counseling.  Infermo points out that the only difference between his conduct and Gelmi's conduct on the day in question is that Infermo suffered an injury whereas Gelmi did not.  This evidence, the Court finds, casts doubt on NJT's articulated legitimate reason and would permit a jury to disbelieve it.

Thus, whether the Court looks solely to the statutory language for what constitutes proscribed retaliation under FRSA or applies the three-step burden shifting analysis to the claim, it concludes that Plaintiff's FRSA retaliation claim presents triable issues of fact and survives this Rule 56 motion.  Accordingly, summary judgment will be denied.

### III.   CONCLUSION

For the foregoing reasons, the Court denies NJT's motion for summary judgment.  An appropriate form of order will be filed together with this Opinion.

s/ Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

DATED: January 24, 2012